Good morning, ladies and gentlemen. Our first case for argument this morning is United States v. Blagojevich. Mr. Goodman. Good morning, judges. My name is Michael Mash. I represent the defendant, Rod Blagojevich. I'm going to argue the sentence issue that is presented in our briefing. As to sentencing, there appear to be two major differences between 2011, the first sentencing, and 2016, the second sentencing. The crimes for which the defendant was convicted are different, and the man before the court in 2016 was different. Mr. Blagojevich was convicted of attempting to extort a benefit in exchange for a seat in the United States Senate. Not just any seat, but the seat of the then just-elected President of the United States. The allegation was certainly the centerpiece of the government's case in the courtroom and attracted a great deal of media attention outside the courtroom. This court's opinion in remanding the case for resentencing recognized this fact and stated that the court in 2011 may have considered Mr. Blagojevich's extortion in determining the length of his sentence. It would be impossible to think that that was not the case. That charge played a major role in the case, at the trial, even in this court's opinion, and it's not a fact now. The sentence in 2011 needed to reflect that fact. The sentence in 2016 should not reflect that fact. Mr. Nash, I'm going to ask you to please address acceptance of responsibility and remorse and how those points factored into Judge Zegel's sentencing decision on remand. I think that's an important factor, and Judge Zegel gave Mr. Blagojevich acceptance of responsibility, so I don't believe that's even an issue in this court. He awarded the two points for acceptance of responsibility, in effect deciding, making a finding of fact, that he was, in fact, remorseful. Judge Zegel, when he sentenced Mr. Blagojevich in 2016, stated that the letters, the post-sentencing rehabilitation was not germane. He stated they did not hear the evidence of the government's former life and activities. But, of course, post-rehab or post-sentencing rehab will rarely reflect the evidence at the time of the case. Those people are attesting to the defendant's post-defense rehabilitation. And whether it's in prison or out of prison or someplace else, it is an important factor that the court must consider. Judge Zegel did not. He dismissed it, in effect, as being irrelevant. You know, Mr. Nash, I will grant you that Mr. Blagojevich has conducted himself admirably in prison. And perhaps this is something that a different judge would give more weight to. But is it your view that Judge Zegel is compelled to treat this as a mitigating factor? Pepper, as I read it, says that post-sentencing rehabilitation may be a mitigating factor. Not that it invariably is. I don't think it's a question of may or invariably is. I think the fact is that Judge Zegel dismissed it out of hand, merely because he said the people to whom he attested to his post-sentencing rehabilitation did not know him as the former governor and his activities. The government argues that it's not germane. There's no case that says it's not germane. 3553 does not say it's not germane. It is an important factor in the sentencing in 2016 and should have been considered. When we say the word considered, I don't mean merely dismissing it or merely mentioning it. Basically, Judge Zegel dismissed it as irrelevant. If Your Honors have no further questions, I'll cede the rest of my time to Mr. Goodman. Thank you, Mr. Nash. Thank you, Judge. And now, Mr. Goodman. Thank you. May it please the court, counsel. I am going to—my name is Leonard Goodman. I also represent Rod Blagojevich. And I'm going to respectfully ask this court to revisit the issue of the jury instructions. It's undisputed that the language that the government added to the good faith instruction after it failed to get a verdict on any public corruption count at the first trial misstated the law. It told the jury that in the context of this case, good faith means that the defendant acted without intending to exchange official actions for personal benefits. The jury was also told that personal benefits included any prospective employment or salary. This also included the health and human services job, which this court, in its prior opinion, found was bona fide employment, and therefore it could not be a bribe under the honest services fraud or the bribery statutes, and that it was not transferable property, and therefore it could not be the object of an extortion. The government's instruction was erroneous. It effectively told the jury when deliberating on every count with respect to Mr. Magoon, with respect to the request for fundraising from John Johnson, in deliberating on every count, the jury was directed to find the defendant did not act in good faith. Or as the government repeatedly told the jury during closing argument, once you find that he tried to get that HHS job, he did not have good faith. Of course, the HHS job was something that Blagojevich never denied attempting to get. You simply cannot call a trial fair where the jury was instructed to reject the defendant's defense based on conduct that we all acknowledge was lawful. It would be analogous to in a murder case directing the jury to reject the defendant's self-defense defense based on lawful conduct such as the possession of a weapon, or in a drug case to direct the jury to reject the defendant's entrapment defense and find that he was predisposed because of his prior lawful possession of narcotics, for example with a prescription. This court would not allow those convictions to stand, and it should not allow this one to stand. He is entitled to a new trial. As much as nobody in this courtroom wants to see a third trial, he is entitled to a third trial. I would like to just briefly discuss the McCormick instructions because in the prior decision, this court stated that the jury instructions track McCormick. It's our position that that was an erroneous decision. McCormick required the jury to find an explicit promise. Blagojevich's jury was told only that he had to know or believe that the request, that the donation would be given in return for some official act. Mr. Krugman, is it your position that when McCormick says the quid pro quo has to be explicit, it means that it must be expressly articulated by the parties? Is that your opinion? No, Your Honor. Because of course that's not the way the real world works. Correct. It does not have to be expressed. It has to be explicit. And as we state in the brief- What is the difference between express and explicit? Express means spoken out loud. Explicit means the jury has to find that, in fact, there was a promise. It could be done, as Your Honor correctly stated, it could be done with a wink and a nod. But as long as the jury finds that there was an explicit promise. What the Blagojevich jury was told is there just needs to be a connection. If he knew that his request for the Magoon fundraising, the only reason Mr. Magoon was going to raise money for Blagojevich is because he wanted the rate increase. There's no question. Under the court's instruction, he was guilty of that. Under McCormick, he was not guilty because he never made an explicit promise to raise the rates for the doctors in exchange for that. So it's a different standard. It's a standard that's an appropriate standard if you're asking for bribes. If you ask for a bribe, if he asked for money for his children's college fund and he knew that the reason the person was going to give him that or that loan or that Ferrari or that Rolex watch was because of some official act, then he's guilty. But that's not the case for campaign fundraising. There is a higher bar, and every single court that has looked at that has agreed that the McCormick explicit promise rule is still the law of the land even after evidence, and we'd ask this court respectfully to take another look at that. And if there's no further questions, I would reserve the remainder of my time. Thank you. Certainly, counsel. Ms. Bonomi. May it please the court. Counsel, good morning. There was no procedural error at the re-sensing in this case because Judge Zegel addressed both of the arguments that the defendant raised and simply found that the reasons stated by the defendant for a lower sentence just did not satisfy him that a lower sentence was warranted. The judge carefully discussed each of the arguments that were raised, discussed whether the law or the crimes of which defendant was convicted were materially altered by this court's decision, and as this court itself found and stated in its decision, the guidelines did not change as a result of the dismissal of the five counts, and because there was sufficient evidence to convict the defendant of the dismissed counts based solely on efforts to obtain money rather than efforts to obtain the cabinet post, those counts were also at play at sentencing because the court was entitled to consider them as relevant conduct. So the court properly found that for sentencing purposes, the crime of which the defendant stood convicted at re-sentencing was essentially the same as the crime that he stood convicted of at the original sentencing. With respect to the second argument that the defendant was a changed man, the district court properly considered that argument and just disagreed that that was the case. You know, I take Judge Segal's point that the many inmates who wrote on Mr. Bilgojevic's behalf were not familiar with him as governor and the way he behaved as an office, as a public office holder. But isn't that always true of the individuals or often true of the individuals who can speak to a defendant's post-sentencing rehabilitation? Isn't the right question under Pepper what a defendant's post-sentencing conduct says about his acceptance of responsibility and his effort to turn his life in a different direction? With respect to the court's comment about the limits of the comments made by the prisoners who wrote letters, I think what the court was focused on were the specific comments made in some of the letters regarding the defendant's nature and character because some of those letters purported to make judgments about his overall character. And I think that that's what that specific comment by the judge was mostly directed toward. Yes, it's true that the issue of post-sentencing rehabilitation is one of the present tense. What is the defendant like now? And I think one thing that the court was saying was that I don't think that these letters from prisoners are necessarily reflective of the whole man. I think that was his point. But specifically with respect to how those letters did or did not establish that the defendant had engaged in extraordinary post-sentencing rehabilitation such that it would warrant a requested reduction of his sentence by two-thirds, the government argued and the judge agreed that these letters did not establish anything like the kind of extraordinary rehabilitation that would have warranted the request that was being made. And specifically with respect to acceptance of responsibility, as the government argued in the district court and in its brief, in fact none of those letters reflected extraordinary acceptance or acceptance at all. There's nothing in any of the letters, in the allocution by the defendant at resentencing, in his counsel's arguments. There's nothing anywhere where the defendant says, you know, I apologize for putting my own personal interests ahead of the interests of the public I was charged with serving. There's nothing. There's nowhere in the place. Well, he spoke of making mistakes. The distinction that we would make is that there's a big distinction between saying that he made mistakes and misjudgments and saying that he committed a criminal offense. What the defendant has never denied, and of course, you know, it's his privilege not to accept responsibility for the crimes. I mean, he can do that all the way to the Supreme Court. It's his privilege to do so and to be absolutely crystal clear, the government has never done this and we don't now request that the defendant suffer for having made that decision. However, acceptance of responsibility is often thought and properly thought of as a prerequisite to leniency, and here what you have is a defendant who's denied the crux of the crimes that were committed because the crux of the crimes aren't his quote, unquote, how he began his allocution, his words and actions. The crux of the crimes are his intent, what he intended to do. That's what, I mean, that's the whole nature of the good faith argument. And, you know, it was the only issue that was really in question during the whole trial. And the defendant has never accepted responsibility in that sense. And any talk of making amends, make amends for what? He still hasn't admitted the crimes that he committed, nor has he in any way addressed the harm that his conduct caused in delaying the reimbursement, the increase in reimbursements to pediatric doctors, in delaying the payovers to the racetrack owners, in delaying the appointment of a senator for the state at a very important time, and maybe most important of all, in further eroding the public's trust in public officials in this state, which was already exceedingly damaged by his predecessor and many others. With respect to the issues that have been addressed by this court before, as the government argued in its brief, the government suggests that those are not properly before the court and they should not be reconsidered at this time. If the court were to reconsider them, the government would urge the court to reach the same conclusions that it reached the first time. The jury instructions were not improper, and with respect to the specific argument that they addressed, naturally included the conduct that this court determined were not properly included, that is, exchanging the senate seat for the cabinet post, that problem has been cured by this court's dismissal of the counts that relate, or vacating, I guess, of the counts that related to that conduct. Even though those counts all related to other conduct as well. And so with respect to that, there's no impediment or no problem caused by those jury instructions with respect to the other counts as this court previously held. Likewise, there's no issue with respect to express or explicit. This court fully addressed that issue, and I'm not sure that I understand it now, but just in case, I do need to clarify. It is not undisputed that the jury instructions provided in this case were contrary to law. The government disputes that. The jury instructions were proper. They properly told the jury what the law was, the law that they needed to apply, and the court previously found that there was no problem with the jury instructions except with respect to the counts that this court determined needed to be vacated. You know, public office holders and candidates for office are under enormous pressure to constantly raise campaign funds. Is there a legitimate distinction to be drawn between an official who steps over the line in his campaign fundraising efforts and one who seeks favors that enrich himself personally rather than his campaign? No, especially in this case. I'm sorry. The answer that I would give is no, but especially in this case. In reality, what is illegal here is not just campaign fundraising, and what went on here was not just campaign fundraising. What is illegal is the exchange of official acts for campaign funds or other benefits. There is no distinction to be made if there is a quid pro quo as there was in this case. This wasn't a murky area here. The evidence demonstrated that the defendant purposely withheld public official action that he actually intended to take at some point in order to obtain campaign funds with respect to the racetrack and the hospital and purposely solicited or set out to solicit campaign funds in exchange for the appointment of a senator. This was explicit in every possible way that is necessary. I mean, it was absolutely explicit. And this defendant made it crystal clear that he was operating on his own benefit. His own words proved that beyond any doubt. And in this particular case, this defendant had no intention of running for office and no intention of using those campaign funds for campaign purposes, as his words also made clear. The defendant said the focus of this operation, like the focus of all our operations, is personal, legal, political. Legal meant how to avoid getting indicted. Personal meant how to put myself in a good position monetarily. And political meant how to put myself in a position where I can get back in the game if I should ever want to. The reality here is that the defendant, when he spoke those words, had already used his campaign funds for personal criminal defense purposes. He had used them to pay defense lawyers at the time that he came in to lie to the FBI when he was interviewed in 2006. And then, of course, he went on to use those funds for the same purpose when he was indicted in this case. It's not accurate that the defendant did not have in mind when he spoke those words that campaign funds could be used to benefit him personally, and the district court certainly did not abuse its discretion in determining that that was the case and determining that this was not a case, as the defendant was arguing at resentencing, where what was left here were charges that were limited to legitimate, maybe slightly overzealous campaign fundraising as opposed to extortion, fraud, and solicitation of a bribe. The defendant was convicted of these crimes, and the district court was absolutely well within its discretion to determine that that had not changed because it hadn't. The reality here is that the defendant has been operating on a basis of plausible deniability, and that is what he has attempted to put forward from the beginning to the end, and it was not an abuse of discretion for the district court to just reject that claim. District court considered all of the arguments and properly determined that the same sentence was warranted, that there was not enough change to warrant a change in the sentence in his view. That was a matter of the court's considerable discretion. It was a below-guideline sentence, and we would ask that the sentence be affirmed and that this court not go on to discuss the other issues. We'll save those for further review. Is there any further questions? Thank you, Your Honor. Thank you, counsel. Would it please the court if we could each have 90 seconds? Fine by us. Thank you. Mr. Nash. Ms. Bonamici says that the letters did not express an overall character change. The letters did not reflect extraordinary rehabilitation. If Judge Zagel had said that, I would not be here, but Judge Zagel did not say that. The government argues that. Judge Zagel dismissed them, basically. And, in effect, the only thing Mr. Brgovich could do was do the best he could in prison. And in doing that, he did something that was extraordinarily different than the man that faced the court in 2011. He taught respect for law, respect for the correctional system, and that's important. Thank you. Thank you, Mr. Nash. Anything further, Mr. Goodman? Yes. I would like to address two points. First, Ms. Bonamici states that, according to the government, there is no problem caused by the jury instructions with respect to any other counts other than the ones this court reversed. The fact is, Your Honor, the jury was told, with respect to every single count, that it must find that the defendant did not have good faith if he tried to make any deal involving any job that paid a salary. That was a misstatement of the law. It directed the jury to find that he had bad faith with respect to its deliberations on every single count. That instruction was read three times. It was the government's theory of the case. It was wrong, as this court pronounced in its prior opinion, and it requires reversal. Secondly, Ms. Bonamici states that there is no distinction in the government's mind between a solicitation of campaign funds and a bribe. Every single court that has looked at that has disagreed, including this court in Giles, where this court stated it recognized that a higher bar is required in campaign contribution cases. In fact, this court stated, to distinguish legal from illegal contributions, it makes sense to require the government to prove that a particular contribution was made in exchange for an explicit promise or undertaking. Thank you. Thank you very much. Counsel, the case is taken under advisement.